## Appeal of MILTON H. BICKLEY.        Docket No. 297.

A corporation preparing to reorganize under the laws of another state transferred all of its assets to its four stockholders by resolution passed December 31, 1918. The stockholders agreed to hold such assets as trustees for the corporation to be organized and to transfer the same to it when it came into being. The new corporation was formed in February, 1919, and the assets were transferred to it by the old corporation and the trustees. *Held,* that the transfer of its assets by the old corporation to its stockholders as trustees did not constitute a distribution in liquidation of their interests therein, but was merely a step in the reorganization of the old corporation, and any gain which may have been derived by the stockholders through the reorganization is taxable for the year 1919 and not as a gain on liquidation of their interests in 1918.

Debts ascertained to be worthless and charged off during the year 1918, and a loss sustained on stock which became worthless, *held* to have been properly deducted in that year.

Submitted December 15, 1924; decided January 31, 1925.

*James L. Rankin, Esq.,* for the taxpayer.

*A. H. Fast, Esq.* (Nelson T. Hartson, Solicitor of Internal Revenue) for the Commissioner.

Before IVINS, KORNER, and MARQUETTE.

This is an appeal from a proposed assessment of income tax for the year 1918. From the evidence submitted at the hearing the Board makes the following

### FINDINGS OF FACT.

Prior to and during the year 1918, the Baldt Anchor Company was a New Jersey corporation with an authorized capital stock of $100,000 divided into 2,000 shares of a par value of $50 each. At the end of 1918 all of the stock of said company was held in equal shares by Norris D. Powell, Edward O. Hall, Richard J. Bennett, and the taxpayer herein, and it was decided that the company should be reorganized as a Pennsylvania corporation. At a meeting of the stockholders on December 31, 1918, the following resolution was passed:

The president announced that the meeting had been called for the purpose of considering the question of the sale and disposal of all of the assets of the Company and also the question of the dissolution of the Company as now incorporated under the laws of the State of New Jersey.

Mr. Bickley moved that the President and Secretary of the Company be and they are authorized and empowered to enter into an agreement to sell and to sell all of the assets of the Company, of all kinds and wherever situate, including all patents, accounts and bills receivable, machinery and other equipment, and stock of all and every character, to Norris D. Powell, Richard

J. Bennett, Edward A. Hall and Milton H. Bickley, at a price equal to the net value or worth of the Company, and all of its assets, this amount to be determined by the books of the Company as of this date, and further the said President and Secretary are authorized to agree upon all terms of the sale as to times and method of payment and to execute and deliver on behalf of the Company, any and all agreements, bills of sale and other assurances of which they may in their discretion approve. The motion was seconded by Mr. Bennett and unanimously adopted.

Mr. Bickley moved that the Company wind up the Company's affairs as of December 31, 1918, and to dissolve as soon as can be readily done, that the President and Secretary be and they hereby are authorized and empowered to have taken all necessary steps to procure the legal dissolution and final winding up of the affairs of the Company and further to make full and final distribution of the assets of the Company among all of the stockholders (after all proper debts and obligations are paid or otherwise cared for) in proportion to their several holdings or shares in the Company. The motion was seconded by Mr. Bennett and unanimously adopted

Contemporaneously with the passage of the above resolution, the four stockholders above named executed a declaration acknowledging that they held title to the assets of the corporation as trustees for the benefit of the Pennsylvania corporation to be organized and agreeing to transfer such assets to the Pennsylvania corporation when formed. Steps were at once taken to secure a charter under the laws of Pennsylvania, and in February of 1919 the Baldt Anchor Co. was chartered as a Pennsylvania corporation with an authorized capital stock of $500,000. When the new corporation was organized the Baldt Anchor Co. of New Jersey executed a bill of sale transferring all of its assets to the Baldt Anchor Co. of Pennsylvania as the nominee of the said trustees and at their direction. No part of the assets of the Baldt Anchor Co. of New Jersey was ever transferred to or received by the said stockholders as such, but they joined with the corporation in executing the bill of sale of its assets.

At December 31, 1918, the books of the Baldt Anchor Co. of New Jersey showed a surplus of approximately $193,000, and when the stock of the new company was issued in February, 1919, there was credited to the account of this taxpayer the sum of $25,000, par value of the capital stock of the New Jersey corporation held by him, one-fourth of the surplus account, and an item of $18,000 owing to him upon a loan to the Baldt Anchor Co. of New Jersey, and new stock was issued to him to the extent of the credit thus established in his favor upon the books of the new company. The Commissioner proposes to assess a tax upon an alleged gain received by the taxpayer in liquidation of the Baldt Anchor Co. of New Jersey in the year 1918.

The Cassada Manufacturing Co. was a Delaware corporation, organized in 1913, for the purpose of manufacturing talcum powder and other similar products. At the time of its organization the taxpayer herein purchased $2,500 of the capital stock of the said company for cash.

During the years 1914 and 1915, the taxpayer, as an accommodation indorser, indorsed two notes of the Cassada Manufacturing Co. in the sum of $10,000 and $5,000, respectively, and said notes were discounted by the First National Bank of Chester, Pa. These notes were extended from time to time, and during the years 1915 and 1916 the company was unable to secure further

extensions and the taxpayer was required to pay the amount of these notes to the bank. The Cassada Manufacturing Co. continued to do business up to and including the year 1918, and all of its business activities were managed and directed by John B. Cassada, its president. During this time it appeared that the company would eventually become a success but late in 1918 all activities ceased and the president of the company left for a point in the South and shortly thereafter died. At this time the company had no assets of any value or any funds with which to pay any of its debts and was entirely insolvent. There was no market for the sale of the capital stock and the testimony shows that nothing could have been obtained for it from any source. At the end of the year 1918 the taxpayer charged off his books, as worthless debts, the amount of the two notes paid during the years 1915 and 1916 of $15,000, and deducted as a loss in that year the item of $2,500 representing the purchase price of the stock.

### DECISION.

The determination of the Commissioner is disapproved and the tax should be computed in accordance with the following opinion. The amount of the deficiency to be assessed will be settled by the Board on consent or on 10 days' notice under Rule 50.

### OPINION.

MARQUETTE: Two questions are presented for decision in this appeal. First, whether the taxpayer herein is taxable for the year 1918 upon an alleged gain received in liquidation of the Baldt Anchor Co. of New Jersey, and second, the deductibility of certain items claimed to have been worthless debts, and a loss on stock alleged to have become worthless.

The Commissioner has proposed to assess a tax for the year 1918 upon the theory that the taxpayer derived a gain from the liquidation of his interest in the Baldt Anchor Co. of New Jersey. This action was based upon the language of the resolution passed at the stockholders' meeting of December 31, 1918. Standing alone, the resolution undoubtedly gives color to a determination that there was a distribution in liquidation to the stockholders, but when taken in connection with the facts preceding, contemporaneous with, and following the adoption of such resolution, it assumes a different hue. The facts disclose that the assets of the Baldt Anchor Co. of New Jersey were received by the stockholders as trustees for a corporation to be formed, and to be known as the Baldt Anchor Co., a Pennsylvania corporation; that when the Pennsylvania corporation was formed, the entire assets of the Baldt Anchor Co. of New Jersey were transferred to it by that company at the direction of the said trustees, who joined in the execution of the bill of sale. No part of the assets of the original company were transferred to or received by the said stockholders in virtue of their several interests in the old company, and they acted as a mere conduit to pass the title of the assets to the new corporation when formed.

It is quite apparent from the disclosed facts that there was not a distribution in liquidation by the Baldt Anchor Co. of New Jersey

to its stockholders on December 31, 1918, but that the stockholders' resolution of that date was merely a step in the reorganization of the Baldt Anchor Co., a New Jersey corporation, into the Baldt Anchor Co., a Pennsylvania corporation, and that this taxpayer is not taxable in the year 1918 as upon a gain received in liquidation of the old company. Any gain which may have been derived by the taxpayer in the reorganization of the Baldt Anchor Co. of New Jersey is properly to be accounted for in the year 1919 and not in 1918.

The taxpayer has deducted as debts ascertained to be worthless and charged off during the year 1918, the amount of two notes of the Cassada Manufacturing Co. aggregating $15,000, upon which he was accommodation indorser, and which he was compelled to pay in the years 1915 and 1916, and $2,500, representing a loss of the purchase price of stock of said company acquired at its organization for cash, and alleged to be worthless.

The Cassada Manufacturing Co. was a small corporation organized to manufacture talcum powder and similar products. Its president was John D. Cassada, who had the entire management of the business of the concern. The company was never a financial success, and during the years 1914 and 1915 this taxpayer indorsed two of its notes for $10,000 and $5,000, respectively, as an accommodation indorser, and the notes were discounted at a bank. The two notes were extended from time to time and, the company being unable to meet them, demand was made upon the taxpayer, and during 1915 and 1916 the notes were paid by him. The evidence discloses that during 1917 and 1918 the company had prospects of becoming a success, but late in 1918 its president left for a point in the South and shortly thereafter died. The business entirely ceased when the president left, and the company had no assets or funds with which to meet its obligations and was entirely insolvent. The stock of the company was closely held and had no market value; and nothing was ever received by the stockholders from the company.

The contention in respect of the worthlessness of these debts is as to when they became worthless. It is the contention of the Commissioner that they were worthless in 1915 and 1916. We think the taxpayer properly determined their worthlessness in the year 1918, when he wrote them off his books. While, as shown by the facts, the company was not a financial success, the testimony produced at the hearing shows there was reasonable ground for the belief on the part of the stockholders and others that an era of prosperity was in prospect for the company, and that it would eventually be able to pay. This belief, however, was dissipated when the president, who was the sole guiding factor of the corporation, departed for a point in the South, leaving the corporation without assets or funds with which to meet its obligations and hopelessly insolvent. As the corporation had no funds or assets of any kind and entirely ceased to do business in 1918, and as the stock had no value and could not be disposed of at any price, it was entirely worthless at that time. We are of opinion that the deduction of the amount of the two notes as worthless debts, and of the loss in the stock should be allowed in the year 1918.